And now turning to our fourth and final case, Zediker v. Orthogeorgia. We have Mr. Friedman and Mr. Bueno. Mr. Friedman, if you are ready to proceed, please begin. Thank you. Good morning, your honors, and may it please the court. I'm Jeremy Friedman for the Relator and Relators Council, Mike Bothwell and the Bothwell Law Group. I'd like to address the second question presented first because it's extremely important and necessary for litigants to be able to settle their fees after they resolve their False Claims Act disputes. Do the district courts have discretion to reduce a relator's fees after a settlement on the merits on the grounds that they only partially prevailed based upon the extent to which the government intervened or settled? Here, the district court below dipped twice. First, the court struck 394 hours because the court found that the memorandum and that the work that Mr. Bothwell had done was not useful to the government. The government did not use the material in their determination of what to intervene on. And then second, the court made a 70% reduction of the entire load star based upon what the government ultimately brought, finding that it was not what the government found to be meritorious. It's our position that this was error to reduce it even one time on this basis. Under the False Claims Act, the district courts do not have discretion to reduce a presumptively reasonable load star on the basis of the extent to which the government intervenes or decides to settle. I think I would have an easier time buying that if your client was still continuing with those claims that the government did not intervene in. But those claims are not going forward, right? That's right, Judge Grant. Those claims are not going forward because the settlement required dismissal of those claims. And the way that these things work is that when we get into the settlement conferences and there are settlement discussions, if the defendant wants to settle the entire case, then he insists that the relator dismiss those non-intervened claims. And the idea that you can settle a claim but then decide not to pay the fees on them is repugnant. But, Your Honor, that has to do with a question that I'd like to address in a broader context. The whole reason why you would make a reduction on the basis of this relies upon the fees when there is work expended on distinct claims upon which the relator did not prevail. I know the Court's very familiar with the Hensley case, but I think it's helpful for us to read specifically. It says, the issue in this case is whether partially prevailing plaintiff may recover an attorney's fees for legal services on unsuccessful claims. And it says, congressional intent to limit awards to prevailing parties requires that there be unrelated claims to be treated as if they had been raised in separate lawsuits. Now, in Hensley, they make a lot of rules that I know the Court is familiar with that there's a distinction between lost claims and lost arguments. You're supposed to allow for advocacy and you're not supposed to reduce lawyers' fees simply because they lose arguments or lose motions. But I'd like to take a step back. Does the False Claims Act even have a prevailing party standard? And it does not. Under the Hart, H-A-R-D-T Supreme Court decision, the Supreme Court said, you do not read a prevailing party standard into a statute unless the text says there has to be a prevailing party. And under this Court's decision in Home Depot, the Court said, when there is no prevailing party requirement, then there's no reduction under Hensley for lost claims. And under the False Claims Act, you don't have to prevail on any claim. There's no requirement. You're entitled to reasonable fees if the government recovers any money, either by way of settlement or judgment. Now, under prevailing party statutes, you sometimes, after settlement, you have to ask, did the plaintiff prevail in the settlement? This was for Judge Grant. This was similar to the, no, I'm sorry, Judge Branch in the McBride v. Legacy Component case in the FLSA. That was the question, whether or not, if there was a settlement, was there a prevailing party? Was there a change in the legal status? But in the False Claims Act, you don't have to prove you're a prevailing party. It's written right into the statute. If the government recovers by way of settlement, you're entitled to fees. So since you're entitled to fees for the settlement, you're not, there's no need to even start to go through and determine whether or not. Let me give you a hypothetical. And I've done False Claims Act litigation, so I know how these negotiations go. But let's say that your relator has claims A, B, and C. Claim A is fantastic. The government lost a billion dollars. You have clear documents to show it, et cetera, et cetera. It actually doesn't take very much time to work up that claim because it's just so obvious and clear. You also have claims B and C, which are pretty much garbage, right? It's just tack on. And I'm not saying you, I'm saying a different attorney has just claims B and C, which are terrible, garbage, just wanted to beef up the complaint, whatever. Those claims go nowhere. The government doesn't intervene in those claims. No one settles for those claims because it's clear that no matter what happened, they were going nowhere. Does the relator and the attorneys for the relator really get to recover fees for working on claims B and C? Yes, if it was reasonable for them to do so. If a reasonable attorney that's experienced and skilled in key town litigation would pursue those to reduce them simply because the government didn't intervene on them. And where do you find that rule about the reasonable attorney? Where do you get that from your text? Well, thank you, Judge Grant. This was what I was going to end with. One of the best decisions on this point is the Simmering versus Rutgers decision from the third circuit in 2015. There was a question about whether or not, both the magistrate and the district court judge had determined that there were various categorical reductions to the fees that were required, including time spent communicating with the state attorney general's office because the attorney generals never intervened or otherwise formally joined the suit. Also found that time spent drafting a second amendment complaint was a waste simply for reason that the documents were not filed and also made reductions to fees on fees. And the third circuit vacated the fee order and remanded it. Court said the error in these reductions is that they assume it is always a waste of time to pursue litigation strategy that does not produce a tangible result before the court. In many cases, diligent lawyers will pursue many lines of inquiry, both in factual investigation and legal research that may not end up formally becoming a part of the court's record. But background work cannot categorically be deemed time wasted. If the Relators Council performed these tasks to pad their bills at a time when it was uncertain as to whether they would even receive anything, the hours spent would be unreasonable. But if a reasonable False Claims Act attorney in building her case would have experts or state officials or would have drafted a minute complaint at the time Relators Council did so, then the fees requested can be awarded. I think the point here also, Your Honor, is that if the Relators Council did in fact spend a lot of time on frivolous arguments or on wasted arguments, the court always has discretion to look at that time and to say it was unreasonable. So why is that not what the district court did here in a pretty thorough order looking at those? How is that an abuse of discretion? Well, the court did not find that it was unreasonable to spend the time on those memoranda. In fact, the court, while it did say a lot of words in its opinion, did not actually address the substance of those memoranda, which we have produced in the record. And if, in fact, on remand, the judge was to make a determination that the time spent on these memoranda was unreasonable, then it would be reviewed here under an abuse of discretion standard, and we probably wouldn't raise the appeal. Instead, what they did is made an across-the-board production of the presumptively reasonable lodestar on the basis of the fact that, as seen by the five memoranda, Zedeker raised numerous theories, many based on the Kelly kickback allegations, none of those allegations related to what the government ultimately brought as claims against Ortha Jojo. How about on page 23, discussing the memoranda, where the court says, nor after reviewing the memoranda, can the court discern how Zedeker's counsel could have possibly spent 270 hours preparing them? Well, why can we consider that one example of the district court's analysis of the usefulness of the efforts that were put forward by the attorney? Your Honor, we do challenge that as not factually correct, and that's why we did, so that would be under an abuse of discretion if that was the determination that this was, that a reasonable False Claims Act attorney would not have spent 270 hours on that. As the record is clear, though, those five memoranda did not take the 270 hours. When you go to the actual declarations and the time records, some of those memoranda were done during the government time period, it was done, the last one was done during the settlement period. Thank you, Mr. Friedman. You have reserved four minutes for rebuttal, so Mr. Bueno, please proceed. Thank you, Your Honor. May it please the court, Edgar Bueno, on behalf of the Apple East Ortha of Georgia, I'm just going to jump right into the last point regarding the 60% reduction for those 270 hours, Your Honors, and my point is this, and we expressed this in our briefs, that the judge, the district court, did not reduce the total number of hours to the LODESTAR by 270%, or by 270 hours. He only used that as an example of excessiveness in the hours claimed, so there was not an abuse of discretion in relying on an error of fact. Again, he did not reduce it by 270 hours for those five memoranda. He applied the 60% reduction overall to this category of time because of the stat or the state of the petitioner's fee petition, that it was fully documented in just a complete mess, so I did want to make that point real quickly. I want to move next to the reduction of the LODESTAR based on a lack of success, which Mr. Friedman spent the majority of his time on, and I want to again just jump right into the record and emphasize a couple of points. The relator believes that it was an abuse of discretion to consider the success or lack thereof in the findings that the district court made, but here, even putting aside the prevailing party issue that I will turn to, the consideration of a in the circuit with precedent of Norman and Popham, where the rule is time spent on discreet and unsuccessful claims should be deducted from the LODESTAR. Otherwise, a fee award can be excessive, and in our case, there were only three claims that the government intervened on and pursued the settlement. The three claims were referrals relating to drug screens to a company called Veritas, free arthrex implants, and medical coding office visits. The remaining unsuccessful claims, there were dozens upon dozens alleged related to different facts and different legal theories. For example, there was several allegations related to Stark law violations, violations of the Medicare secondary payer statute, as well as allegations related to medical unnecessary services provided by OrthoGeorgia. Again, these were all unrelated different facts and different legal theories. Those were the remaining claims. They were separate and distinct from the claims that were resolved and settled, and the district court noted that. Thus, counsel should not be allowed to recover for work on those discreet and unsuccessful claims. Furthermore, your honors, the remaining unsuccessful claims did not contribute to the overall settlement. Thus, the relator was not successful with those claims, and this is an important point relating to the settlement of false claims at cases that it seems the panel is well aware of. Here, counsel may not have lost the other remaining claims to a judicial order or a judicial decree, but he certainly was not successful, nor did he prevail on them, and this is further reflected by the fact that he had the opportunity to pursue those claims himself, and even threatened to do so, but he never did, so he abandoned those claims, and after resolving the three claims that were at issue, and after signing a settlement agreement, which he said was fair, adequate, and reasonable, he dismissed the rest of the claims without prejudice. Thus, all the claims were not resolved in settlement, and that is the distinction with the vast, vast majority of these false act cases when they reach settlement, where you have a settling defendant pay X number of dollars for certain conduct, you know, as without any doubt, a violation of law, then you have the type B that are oftentimes just thrown into the settlement. You pay something, maybe not full damages, maybe no penalties, but they're still thrown into the settlement, and the settlement encompasses, it's global, it encompasses all claims. That's not what happened here. What happened here is that we resolved three claims and left the others to be pursued. We didn't pay on them. We didn't get a release for them under the settlement agreement with the government, and again, the relator had every opportunity to pursue those claims, and that, again, is an important distinction here, because you have to look at the success and the results obtained, or the results achieved here with the settlement, and here, again, it related only to three claims. On the prevailing party statute, or the prevailing party language, I would point out that the legislative history of the 1986, dating back to the 1986 amendments that brought into the False Claims Act, the QTAM provisions, in the Senate report, it references a prevailing relator in the context of awarding attorney's fees for a defendant. I believe at that time, it was 3730 B-5. It's now B-1, but the Senate report references that same section, and it makes fee awards mandatory, and when a party prevails, it is very much outcome-oriented. A party prevails when there are proceeds of an action or there is a settlement, and again, those awards to the prevailing party are mandatory, so while the magic words prevailing party may be absent from the False Claims Act, it sure reads from a statutory text and from statutory operation, that sure sounds like prevailing party language, and for these reasons, the courts have long considered the False Claims Act a prevailing party statute, even in the absence of prevailing party language. Next, Your Honor, I would draw your attention to a point that actually Mr. Friedman made about the doubly discounting, and this relates to the reduction of their lodestar based on the lack of success. Here, the relator, well, actually, the court struck 60 percent of time from the government investigation category from the fee petition, and then another 70 percent across the board reduction for a lack of success, and as Mr. Friedman pointed out, they believe that that was doubly discounting and an abuse of discretion, but it's within the lodestar. He struck hours that were excessive, redundant, not reasonably expended, that were poorly documented. He struck those and then looked at the litigation as a whole. He subtracted the loads from the lodestar by taking into account the lack of success in the separate determinations in order to achieve a reasonable fee award. This is not doubly discounting, and more importantly, the district court made clear that the reduction for the excessive hours, hours that were redundant, hours that were not reasonably expended, did not account for the fact that many of the claims were ultimately unsuccessful. The reductions were made without regard to whether the claims were successful or not, so there was not any doubly, double discounting here by the district court. Next, Your Honor, on the point that Mr. Friedman made regarding this, in his briefs regarding the burden shifting approach, that is interesting. The point I would make there and highlight from our briefs is that there is no 11th Circuit precedent that advocate for this burden shift and where the defendant now has the burden to prove a fee petition is unreasonable. The basic rules of construction in statutory fee shifting cases is clear. The trial court, the district court, who is in the best position to evaluate a fee petition, considers the fee petition, and the petitioner has the burden of showing that he is entitled to an award and both his fees and his hours are reasonable. After hearing objections from the defendant, the district court can closely examine using his or her own experience and expertise and examine a fee petition, sift through the competing arguments, and determine a reasonable load star and remove hours that are excessive, redundant, or not reasonably expended, and that is exactly what happened here. The court even recognized that the load star is presumptively reasonable, but again, certain deductions can occur. Here, the appellant is just unsatisfied with the result, with the court's end result, but it's not an abuse of discretion, and practically to shift the burden to a defendant in this case is really unworkable, particularly if you consider the seal period, which takes a long time for the government to investigate. The defendant is not in any type of position or is not in good position to evaluate the efficiency and reasonableness of work being done during this time period. They may not even know or be aware of, and probably aren't aware of, the QTAM and the QTAM investigation. Moreover, this tension would just lead to more litigation, more discovery, more discovery battles, as opposing parties would endlessly probe whether work performed was reasonable and necessary. And to stray from 11th Circuit precedent that the district court followed and insert a burden-shifting approach, as counsel suggests, we believe unnecessary and would not lead to a better result, but only lead to more uncertainty and more litigation. Your Honor, those are the main points that I wanted to make. I'm happy to answer any other questions that you may have. Thank you, counsel. Mr. Friedman, you've got four minutes on rebuttal. Thank you, Your Honor. The reference to the Norman and Popham cases that talk about reductions for limited success or lack of prevailing party status in certain claims, both of those were under prevailing parties' statutes. The argument that the court should apply those same rules to the False Claims Act misses one of the fundamental points that are made in the cases that we cite, that were cited to the district court, but were not cited by the defendants and were not cited by the district court. The Fallon case out of the 7th Circuit with Judge Easterbrook, the Averbeck case, the District of Massachusetts in former Chief Judge Young, as well as the Poulton case and the Hernandez case. And since then, there's been the Victaulic case and the Tran case. All of those cases talk about under the False Claims Act, it would be contrary to the purpose and the functioning of the act to try to impose some limitation on what evidence that a QTAM Relators Council should investigate. They're tasked by Congress under the 1986 amendments to thoroughly claim all the allegations that might relate to CENTER. They have to plead everything with particularity. What Congress did not want is Relators Council and Relators to hold back on information on claims that might potentially be an important for the government to know. Because in some thinking, well, if the government doesn't adopt this allegation, it's going to be a reduction of my fees. It would fly in the face of the purposes of the act. Now, to call this not a double discount is clearly wrong. In Judge Karnes' decision, when you were on the panel, Judge Karnes, in Walker v. Iron Sushi, there was a very clear discussion about what it is when you do an improper double discount. And that is when you take one factor into place, when you determine the lodestar amount. And in this case, he reduced time because Relators Council spent time on arguments that the government did not intervene on. And then, similarly, it considered those same factors when it reduced the total lodestar, including all the time, like fees on fees and all the work doing on the Relators share. All of that is in the statute. It's part of the responsibilities of Relators Council. All of that should be compensated. Could you give me the slide on that case, Mr. Friedman? Sorry? Could you give me the slide for the case that you're talking about? Yes. It's Walker v. Iron Sushi, LLC, 752 Fed Appendix 910, 2018. And it was an FLSA case where the court explained exactly what is and what isn't double discounting. Now, the idea that Relator was free to go ahead and litigate these non-intervened claims is flatly contradicted by the record. If you look at the settlement agreement itself, which is document 47-1 at page 10, paragraph 16, Relator was required to dismiss the which is at document 38 at paragraph 4. It said, as such dismissal is contemplated and agreed to as part of the settlement agreement. So, your honors, we ask that the court reverse and remand for further consideration and applying the standards that have been adopted in many other jurisdictions. Yes, the Relator has responsibility. Your time has expired. Thank you. Thanks to both of you. We have your case under submission and we are in recess until tomorrow morning. Thank you.